Hear ye, hear ye, hear ye. The United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning. This is Judge Wilson in Tampa. Judge Grant is in Atlanta and Judge Schoflat is in Jacksonville. And we have three appeals that are scheduled for oral argument this morning and we're ready to proceed. I would advise counsel that we have read the briefs and we have also relevant parts of the record if that will assist you in narrowing the focus of your arguments for the time that you have available. Ms. Geddes is the courtroom deputy and she will serve as the timekeeper and she will let you know when your time has expired and before that she will give you a two-minute warning. So it looks like we are ready to proceed with the first case. First case is Rebekka Ann Behr and Louis Behr v. James Campbell for the Palm Beach County School District. Rachel Ann Ustendorp is here for Behr and Sean Fahey is here for Campbell. And Ms. Ustendorp, are you ready to proceed with your argument? I am, your honor. All right. Thank you, your honor. And may it please the court. Rachel Ustendorp, I'm from the law firm Carleton Fields and I'm appointed counsel on behalf of appellants Rebekka Behr and Louis Behr. The district court sui sponte dismissed an entire pro se action with prejudice under the Rooker Feldman doctrine. When applying Rooker Feldman, this court has said that the focus should be on the specific claims relationship to the state court judgment. However, here the district court looked at what it believed to be the core of the entire complaint rather than to the individual claim. And that's important here because by doing so, the court dismissed several constitutional claims that this court and others have held are not barred under Rooker Feldman under similar circumstances. For example, plaintiff's search and seizure claim is a prime example of an independent claim that courts have said may be decided without calling into doubt the state court judgment and therefore is not barred under Rooker Feldman. Is there any reason why these in the state court custody proceeding? Yes, there is, Your Honor. So these are federal claims. I believe with our briefs have explained that, for example, with the due process claim, there's an allegation that Rebekka and J.B. were not afforded adequate representation. And so that's similar to the Seventh Circuit's case in where once a plaintiff who, after she had turned 18, brought due process claims and other claims. And in that instance, the court had decided that she didn't have a reasonable opportunity to raise her claims because she was not present at the hearing and wasn't represented by counsel. Here we have a similar case. Rebekka is now a young adult and she's raising these claims. And there's also an allegation that she wasn't able to, that she wasn't afforded counsel. Well, there's Rebekka here and there's also Lewis, right? Correct. All right. And also J.B. Does Florida law allow constitutional challenges to a juvenile court's orders like does Georgia did in the Goodman v. Sykos case with review by the Florida Supreme Court and ultimately review by the United States Supreme Court? So, yes, we recognize that it does. However, if the children in this case were not afforded adequate counsel, even if they could raise it on appeal, then they couldn't have had a reasonable opportunity to raise the claim. Can we assume that they were appointed guardian and lied to each one of them during the Shelter hearings and for whatever other hearings there were? Well, here, all we're going off of is the allegations because the court sua sponte dismissed on-worker felon. I'm not arguing it against you. I'm throwing you a softball. As I understand it, the whole problem about custody and so forth started with a Shelter hearing. Okay. Before a second judge, probably sitting in the juvenile division down there in Palm Beach County. Okay. And under the juvenile rule 8.305, the court would appoint guardian and lied for them. Would you agree with that? Correct. Okay. So, if a constitutional claim was going to be raised, it would have to be raised by the guardian and lied for them. And it doesn't seem... Were the guardians lawyers? Sometimes they are, but frequently they are not. No, I mean, we can't tell from the complaint. No, we can't. We can't tell from the complaint. And typically... And sorry, I misspoke. So, in Goodman, the court said that when you're challenging subject matter jurisdiction, as here, on a factual basis, that the court can consider matters outside of the pleadings. So, that means they could have presented evidence. You can have affidavits, et cetera. Here, my clients were not afforded that opportunity. The only thing that we have before us, the record on appeal, is the complaint. And there's an allegation that they did not, that they weren't afforded adequate counsel. And as your honor pointed out, that perhaps the guardian ad litems were not able to raise those legal claims. Speaking of Goodman, would you say that that's still good law in its entirety after Exxon Mobil, or is there anything that we have to cast aside after Exxon Mobil? So, I think Goodman, in terms of the search and seizure claim, here, even... It's based on the fact that there was no evidence considered in the state court. I would argue that Goodman now would also stand for the proposition that after Exxon Mobil, even if that claim had been raised in the state court, that the Supreme Court has said that even if there's a claim that was litigated in the state court, or if it's something that denies a legal conclusion, as long as there's some independent claim, that there's still jurisdiction, and a conclusion would come in then. Didn't we favorably cite Goodman in our decision in Target Media Partners versus Specialty Marketing a couple of years ago? Correct. Yes. What... It's a little bit difficult for me to tell from the complaint what relief your clients are seeking for the claims that you're focusing on here. Can you tell me for each of the claims that you're saying should not have been dismissed under Rooker-Feldman, what relief your clients are seeking? So, we recognize that there is some relief that's asserted in the likely they would not be able to seek in federal court, and that includes expunging records and things like that. For each of the claims that we've recognized in our briefs, they have sought damages. Okay. So, you'll say that that's the relief that you're seeking at this point for all of the claims that you're saying need to keep going forward. Correct me. Weren't there other bases for the dismissal by the district judge in this case? The complaint is a shotgun pleading, and the plaintiff's failed to comply with a court order compelling them to clarify their allegations. The plaintiff's failed to state a claim. Well, which would be granted 12B6. There were other bases for the dismissal. What do you have to say about those? Well, respectfully, the district court's order solely dismissed based on Rooker-Feldman. There was an initial dismissal as a shotgun pleading, but the court solely dismissed under Rooker-Feldman. It didn't exercise its discretion to dismiss under 41B or as a shotgun complaint. Here, that's important because although perhaps they were proceeding pro se, perhaps there could have been some improvement upon the complaint. Ultimately, there are several federal claims that we've identified that should not have been dismissed by the district court. And so we would argue that even if on remand, that that's something that the court will have a more limited complaint and can decide from there whether the state law claims should be, whether she should exercise supplemental jurisdiction over the state claims. What do you think after ExxonMobil, how would you describe the inexplicably intertwined test? And does that make a difference for how we respond to the claims of your clients? So I would say that we do recognize as in the target media claim, in the target media case, that inextricably intertwined is still a factor that's considered. However, ExxonMobil has made clear that it is significantly, that courts have been applying the doctrine way too broadly, and that it's a very limited and narrow doctrine. And as I mentioned earlier, in this, in ExxonMobil held that as long as there's some kind of independent claim, even if it denies a legal conclusion, or it's been litigated in state court, that there's still jurisdiction. And I would say that it seems that the courts have, quote, unquote, hewn closely to that ruling. And it's really those claims that seek to directly reject a state court judgment. Because inexplicably intertwined in the first place is from Feldman. It's not an innovation, or an expansion by courts, right? Correct. However, I think maybe courts have gotten out of our skis on it from time to time, but in its original form. And I think that that was the point of Exxon, and why the court took care to say that, you know, courts have gone too far, applying this far too broadly. And I'd say here, this is an example of a court applying, applying Rooker-Feldman far too broadly. There, the court didn't look at the individual claims, there's constitutional claims that this court has said should survive under Rooker-Feldman, and in order, and by doing so, has denied a hearing to my clients, which this court in Target Media said that, that they, that courts should be really careful to not, to not deny a hearing to those claims that are within the proper cognizance of the court. And if there's no further questions, I'll reserve for rebuttal. All right. Thank you, Ms. Ostendorf. We'll hear from Mr. Fahy. Good morning, and may it please the court. My name is Sean Fahy. I'm here today on behalf of two of the appellees, Dr. James Campbell, who's the principal of Seminole Ridge High School, and the school district of Palm Beach County, really the school board of Palm Beach County. So Lewis and Rebecca Baer's 75-page second amended complaint is what this court has called a shotgun complaint. And so for an individual defendant faced with trying to respond to it, we cannot say that there's, there's a whole lot in the second amended complaint that we would call clear factually or legally, but it is pretty clear from reading it, what motivates the federal claims that are brought by the Baers in this case. And that is that the Baers believe that the state courts were weaponized against them, and they claim that they have been injured by a series of resultant state court rulings, namely by way of the family separation that those We ask this court to affirm the dismissal with prejudice in this case for any and all of the following three reasons. First, the district court properly dismissed this attack on state court proceedings and state court rulings, excuse me, under the Rooker-Feldman doctrine, and any argument that the dismissal should not have been with prejudice or that another opportunity to amend should have been afforded has been abandoned in this appeal. And second and third, two related reasons. The district court's dismissal with prejudice was appropriate because this was another shotgun complaint and it was filed in willful disregard of prior court orders and this circuit's ample precedent on shotgun pleadings. We're just reviewing the dismissal based on Rooker-Feldman and that's it? I agree with appellant's counsel that the at least from reading it, the only issue analyzed was Rooker-Feldman. So we submit that dismissal with prejudice was appropriate on other alternative grounds on this record, relying on this court's ability to affirm on any basis that the record supports. Let me ask you this question now, because there are some claims that they don't appear to be inextricably intertwined with the state court custody judgment. The due process claim under section 1983 in count two, the discrimination claim in count 10, medical malpractice in count 15, legal malpractice in count 21, and then there's the unreasonable search and seizure claim in count three and in Goodman versus Cyprus, we decided that that claim survives Rooker-Feldman. Why can't these claims succeed without calling into doubt the state court child custody decision? All right, so let me address your question, your honor, and I'll start with the state law tort claims. Our argument is not that Rooker-Feldman bars those, those are state law claims, and because there are not federal claims here that are not barred, any state law claims should be dismissed for lack of jurisdiction. So the court doesn't need to analyze whether the state law claims survive Rooker-Feldman. For the due process and the discrimination claims under this court's reasoning in Goodman, those are pretty clear case for Rooker-Feldman, because what the bears are saying is proceedings were initiated, were based upon fabrications, lies, fraud, conspiracy, whatever else it may be, and that improper considerations factored into the state court's judgment. They improperly considered Mr. Bear's age, the age difference between him and his former spouse. They failed to take into account the needs of the children with respect to disabilities, their educational needs, the religious practices of the family. All of those discrimination and due process claims are squarely asking the district court to decide that state court wrongly decided the issues before it, that its judgment should effectively be nullified because it was based on improper considerations or incompetent evidence or some combination thereof. What would you, what would you say to your opposing counsel's statement that what they're seeking is damages? I've not heard that they're trying to overrule the state custody decision. I've heard they're seeking damages for constitutional violations. Now, they may or may not win them, but it does seem to be a different story. So yes, Your Honor, what this court explained in Goodman is that the relief sought, just as, just as it's not, it's not dispositive whether a case is styled as an appeal. It's not dispositive what relief is sought. What's dispositive under Rooker-Feldman is what the court is being asked to do. And what the court is being asked to do is effectively, it's going to be forced to decide that the state court decision was wrong because it was ill-begotten from the, from its inception because of the parties involved or because it was based on improper considerations. And so the fact that they're seeking damages rather than vacator of these state court rulings or some other kind of injunctive relief is, does not change the fact that Rooker-Feldman bars the claims. They, one of the problems here is this was a classic case for a motion for more definite statement. Of course it wasn't made, but at any rate, the problem I have with the case, you have to segregate out each defendant and then figure out what kind of claim was brought against the defendant. Now the school board and things like that, those, those, there are no claims that I see against any of those entities, but there, there could be claims against the social workers who investigated the scene. All of this came out of a shelter hearing degree or a series of shelter hearings and reviews because the circuit judge reviews the results of these shelter hearings whenever a parent, for example, complains that circumstances have changed. Isn't that the setting sort of? Asbestos can be discerned from the pleading. Yes. Yeah. I mean, that, that's the gist of it. Okay. So I don't believe the minors could have raised, Gardner and Adleitman would have to do that, raise a due process claim. And so therefore Rooker-Feldman wouldn't apply to a claim that can't be raised. Because of the, because of the structure of the proceeding, that's, that's what concerns me. Well, these are by and large, these are like grand jury proceedings. The judge finds probable cause that the child, the dependent, then decides where to put the child, basically. Well, we, we've cited case law in our brief, your honor, to explain that due process challenges, constitutional challenges, and I believe, I believe Ms. Ostendorp acknowledged this, they can be raised on appeal in Florida state courts relating to these kinds of proceedings. But I will say the child, the child would have, Gardner and Adleitman would have had to take the appeal to the DCA and raise the claim. Or the father potentially, not on behalf of the child. Well, whoever, it doesn't have to be the, the father doesn't have to, because the Gardner and Adleitman in the, in the, in the proceeding is in charge of the child. So the Gardner and Adleitman would take the appeal to the District Court of Appeal. It's also, it's because of the structure of this, this is not, the case was not litigated as an adversary proceeding, basically, in state court. It was a probable cause determination, have to do with whether the children were dependent, and should be removed. Isn't that, squeezing it down, isn't that what it was? Regrettably, I can't say with certainty that I know that. I don't disagree. I don't know that it's not true. I just, I don't understand that to be clear. Well, I take the allegation of the complaint and fit them into Florida law. Right. Okay. I'm somewhat familiar with them. So they have the, they have a, a hearing and determine whether the child is dependent. This is before a circuit judge. And so you have a battle going on between natural parents and social workers and so forth. And the judge decided to place the child. So all I'm saying is, it seems to me that the of the placement, and I suppose raise a due process claim that the hearing was procedurally, not subjectively, procedurally out of kilter with the due process clause. So, so my point is, it may well be that there is a claim against the investigative worker, for example, who gave the circuit judge the information that led to the dependency determination. But all that detail is not in the complaint, except that you just I discern it from the complaint. So it sounds like your honor is concerned that there wasn't a reasonable opportunity to raise the claims, which is a reason not to apply the bar. But I want to answer something you said, which is that as an alternative basis for dismissal here, just for just for the two appellees that are before the court today, Dr. Campbell and the school board or the school district, we submit that that there's the claim, the complaint evolved, it was originally brought just against them. But by the time we reached the second amended complaint, their role in all of this is virtually indiscernible from the from the pleading. And just to answer Judge Wilson's search and seizure. This court in Goodman did say that such a claim was not barred, because it did not. There was no indication that it was really part of the proceedings. It was an independent act that took place before any state court rulings. But but as we've explained in our brief, that's not clear from this complaint. In fact, really, the search and seizure claim in the second amended complaint is pretty bare bones. It essentially just alleges that a search took place with and gives very little detail. So and what we rely on is that of course, as the parties asserting the existence of federal jurisdiction, the bears have the burden and I recognize their pro se, but they still have the burden of alleging facts that show that federal jurisdiction exists, which would include facts that show that this their claims are not barred by Rooker Feldman and their complaint does not survive that test. Do it? Are you trying to set out a plain statement requirement for anyone who's claimed might theoretically be barred by Rupert Feldman? I'm not aware of that requirement. Right? It's not required by rule eight, or per se, Your Honor rule 10. But essentially, it's just that the party asserting the existence of federal jurisdiction always has the burden to demonstrate that it exists. And that and the Third Circuit in case we cited, explain that that does literally mean alleging facts to show that Rooker Feldman does not bar a claim, whereas here, you're alleging a close relationship, at least between your claims you're asserting and state court proceedings. There may there may be many reasons that many of these claims don't survive, whether it's as you suggest, the shotgun pleading or Florida rules of claim preclusion, race judicata, issue preclusion, all of that, but I, I'm not convinced that under our precedents or Exxon Mobil, you can just say, well, this all looks pretty generally like it may have been covered under state law. So we're going to dismiss under Rooker Feldman because they haven't shown us that we can't. Do you do you think the court did something different than that here? I think the court, Your Honor took, took the bears at their word about what their complaint was about. They described their case as simple. They say it's one of the many examples of one parent making false claims against the other to gain custody and child support. And so yes, there are 30 causes of action in this pleading. But most of those causes of action are just filled with boilerplate legal conclusions, few if any facts. So analyzing just a handful of facts that are actually alleged in the second amendment complaint, I think the district court properly assessed the complaint for what it is, an attack on state court judgments. That said, you know, we've raised these as independent arguments, Rooker Feldman, shotgun complaint, but really another thing the court can do is say, it's both the, you know, there are, there are a handful where it's arguable at best that they aren't. But this is clearly a shotgun complaint. It, you know, it falls into three of the four categories this court identified in Weiland that its precedent has identified as shotgun complaints. So this court could essentially say, it's the litigants job to present a short and plain statement. They haven't done that. Most of their claims appear to be barred by Rooker Feldman, to the extent any aren't. Dismissal was proper because this was a shotgun complaint. And it just, that's not what we did in Goodman though. We said, well, the search and seizure issue should survive. And in this case, it's virtually identical to Goodman. So we've knocked out just about all of the claims based on Rooker Feldman, but we said the search and seizure issues should survive. And I guess my question is why shouldn't we do the same thing in this case that we previously have done in a similar case? Okay. And I see my time will expire while I'm answering this question, Your Honor. So Goodman doesn't set forth a per se rule that this court must remand simply because a claim survives Rooker Feldman. What we submit is Goodman is a pro se shotgun complaint, such as this one. And again, it's not a rule. The court certainly could remand to the district court if it believes the search and seizure claim is not barred. But given that this is a shotgun complaint, given that the search and seizure claim is bereft of any factual support in the complaint, there's just no reason to do that. There's no reason to expend that judicial labor here. This court is perfectly situated to affirm the dismissal. And we respectfully request that it do so. Thank you. All right. Thank you. And Ms. Osendorf, you've reserved some time for rebuttal. All right. Well, Your Honors, first I would say in response to the argument that the district court got this right by really looking at the essence of the claims, this actually is very, the district court's order is incredibly similar to the order that was entered by the district court in Goodman. The court had said that plaintiffs are essentially challenging the basis of the juvenile court of Cobb County. And as you are aware, the court went through and looked at the individual claims and decided that some were barred and some were not. With regard to the search and seizure claim, to the extent that that the state court didn't consider the evidence, there's no allegation here. The court only looked at the complaint and there's no allegation or evidence showing that the evidence was relied on or that it was raised in state court. And to the extent that that was required from us as our burden of showing subject matter jurisdiction, we were denied, we were not afforded an opportunity to brief the issue, to present evidence on subject matter jurisdiction. And therefore, on these allegations, it survives. And as I mentioned in my argument, that I still believe that this is an independent claim, even if it was raised in state court. And relatedly, to the extent that appellees argue that we abandoned an opportunity to amend, I would disagree with that. The court dismissed sua sponte solely on Rooker-Feldman. It's not a pleading issue. The court did look solely at the complaint. But as I mentioned, we should have been afforded the opportunity to show up our claims and show that they're independent. And to the extent, while we believe that the allegations themselves are sufficient to that Rooker-Feldman does not bar the claims that we identified, to the extent that the court disagrees, we should be given that opportunity on remand. And whether that means to allow them to brief it or perhaps replead the claims with a little bit of guidance on Rooker-Feldman, but I agree that they can't be expected to have pled around Rooker-Feldman. That's not rule eight. And finally, with regards to the dismissal with or without prejudice, this court has repeatedly held that subject matter, a dismissal for subject matter jurisdiction is not an adjudication on the merits. At minimum, if this court is inclined to not reverse, to affirm, at minimum, the claims should have been dismissed without prejudice for lack of subject matter jurisdiction. And perhaps the state court claims remanded back to state court where this case began. All right. Thank you, Ms. Ostendorp. Thank you. And I would note that you provided a very valuable service for the court. You were appointed by the court to represent the bears on this appeal and the court thanks you for your service. Thank you, Your Honor. Thank you, Mr. Fahey.